UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JERRY W. SMITH,                                    CIVIL NO. 09-293 (JRT/JSM)

      Plaintiff,

v.                                                 REPORT AND RECOMMENDATION

UNIVERSITY OF MINNESOTA MEDICAL
CENTER-FAIRVIEW RIVERSIDE, et al.,

      Defendants.


The above matter came on before the undersigned upon defendants University of Minnesota Medical Center-Fairview-Riverside Campus and Dr. David Guth, D.O.'s Motion to Dismiss Amended Complaint [Docket No. 36], and Defendants Minnesota Board of Medical Practice and Helen Patrikus' Motion to Dismiss Amended Complaint [Docket No. 53]. Plaintiff appeared pro se; Kelly A. Putney, Esq. appeared on behalf of defendants University of Minnesota Medical Center-Fairview-Riverside Campus and Dr. David Guth; and Daphne A. Lundstrom, Esq. appeared on behalf of defendants Minnesota Board of Medical Practice and Helen Patrikus.   This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A), (B) and Local Rule 72.1(c).

## I.    FACTUAL BACKGROUND

Plaintiff Jerry W. Smith ("Smith") initiated the present action on February 10, 2009.  See Docket No. 1.  The basis of the jurisdiction alleged by Smith was federal question jurisdiction.  See Docket No. 1-1 (Civil Cover Sheet).  On November 13, 2009,

Smith filed an Amended Complaint [Docket No. 32]. The facts alleged in the Amended Complaint were as follows:

Smith is African American, a vulnerable adult and disabled. See Amended Complaint, ¶ 4. He was receiving social security disability benefits pertaining to his major depression, post-traumatic stress disorder ("PTSD"), and chronic back pain. Id.

On July 25, 2008, Smith voluntarily committed himself to defendant University of Minnesota Medical Center-Fairview-Riverside ("Fairview") for treatment of his major depression and PTSD. Id., ¶ 5.

At the time of his admission at Fairview, Smith was crying uncontrollably and reported to Fairview staff that he was hearing voices commanding him to kill people and hurt himself. Id., ¶ 6. Smith believed that he was losing control and might act on the voices he was hearing. Id.

Defendant Dr. David Guth ("Dr. Guth") was assigned as Smith's treating doctor. Id., ¶ 7. Dr. Guth did not appear to be interested in Smith's complaints and only spent six minutes with him upon admission. Id. Dr. Guth returned to visit Smith on the morning of July 26, 2008, accompanied with several other persons unknown to Smith. Id., ¶ 8. Citing to his right to privacy, Smith asked that Dr. Guth request that the other persons leave the room. Id. Dr. Guth did not respond to his request. Id. Smith reiterated his request that the persons accompanying Dr. Guth leave the room. Id. Dr. Guth responded that the persons were with him and that they were staying. Id. Smith became upset and advised Dr. Guth that he was invoking his right to privacy and the right to talk about his medical condition only in Dr. Guth's presence. Id. Again, Dr. Guth refused to respect Smith's request. Id.

On July 27 and 28, 2008, Dr. Guth sent a female to his room.  Id., ¶ 9.  This female had been in the room with Dr. Guth on July 26, 2008.  Id.  Smith advised this woman that he did not want to discuss his medical condition with her, given that she was not his doctor.  Id.  Several hours later, the female returned with Dr. Guth and a third unknown person.  Id.  Smith advised Dr. Guth that he was upset with him, as he was exacerbating his mental condition by subjecting him to mental anguish.  Id.  Smith asked Dr. Guth to give him a reason why he refused to respect his privacy.  Id.  Dr. Guth acted as though he did not hear him and failed to respond to his inquiry.  Id.  Dr. Guth did not ask the other two individuals to leave his room.  Smith responded by telling them to "get the hell out of my room-you are not my treating doctors and I have not waived my right for you to be here."  Id.  Dr. Guth responded that "no one has to depart."  Id.

Smith reported the treatment of Dr. Guth to his attending nurses, however, the nurses advised him that there was nothing they could do about it because he was a doctor and in full control over them on the floor.  Id., ¶ 10.

On July 29, 2008, Dr. Guth came to visit Smith.  Id., ¶ 11.  Smith told Dr. Guth that he was failing to honor his requests for privacy and confidentially.  Id.  Smith also asked Dr. Guth to write a letter to a judge regarding a federal proceeding in Kansas.  Id.  In particular, Smith requested a letter exempting him from attending a deposition on August 20, 2008, in Wichita Kansas, based on his hospitalization.  Dr. Guth refused to do so and did not give any reason as to why.  Id.  Subsequently, Smith's nurses wrote a letter to the judge advising him of Smith's situation and that Smith did not know how long he would be hospitalized.  Id., ¶ 12.

On July 31, 2008, Dr. Guth visited Smith.  Id., ¶ 13.  Dr. Guth asked Smith how he was feeling, to which Smith replied that he was doing "pretty bad" and was continuously hearing voices to kill people and injure himself.  Id.  Dr. Guth did not respond to Smith's report of his condition.  Id.  Dr. Guth did provide Smith with a generic letter in order to advise the Kansas court of his situation.  Id.  Smith told Dr. Guth that he could not use the letter because: (1) the letter stated that Dr. Guth had treated Smith since July 31, 2008, as opposed to the date of his admission on July 25, 2008; (2) the letter stated that Smith could return to work or school after discharge, even though he was not employed; and (3) the letter contained the provision that there were no restrictions upon his return to work.  Id.  Dr. Guth refused to correct these inconsistencies after they were called to his attention.  Id.

Smith was unable to deal with his mental illness and Dr. Guth's actions.  Id., ¶ 14.  Dr. Guth and the unknown persons continued to visit him.  Id.

On August 6, 2008, Dr. Guth visited Smith with two unknown women and advised Smith that he was being discharged.  Id., ¶ 15.  Smith protested, claiming that he was not ready to be discharged because he was still hearing voices commanding him to kill people and himself.  Id.  Dr. Guth told Smith that he "didn't care, he was discharging Smith."  Id.

Smith's August 6, 2008 discharge summary provided that Smith was suffering from confusion, his mood was worsening, he was feeling aggressive, he had thoughts of suicide and was losing more sleep.  Id., ¶ 16.

On August 10, 2008, Smith was taken to Regions Hospital in Saint Paul, Minnesota, by the Saint Paul Police Department, and was admitted for treatment of

major depression and PTSD, which was unabated from his hospitalization from Fairview. Id., ¶ 17. Smith remained hospitalized at Regions Hospital until September 4, 2008. Id.

On August 22, 2008, United States District Judge M.L Beiot dismissed Smith's action for his failure to attend the August 20, 2003 deposition. Id., ¶ 18.

Smith alleged that Fairview has been aware of the abusive treatment of patients by Dr. Guth, but has failed to discipline, reprimand or dismiss Dr. Guth in order to prevent him from unlawfully treating Smith and other patients. Id., ¶ 19. Smith also alleged that Fairview has refused to provide the necessary health treatment to patients in the past. Id., ¶ 20.

Smith further alleged that Minnesota has opted to participate in the federal Medicare program under 42 U.S.C. § 1361, et seq., in order to provide medical assistance to the poor, disabled and others in need, and has designated the Minnesota Department of Health Services ("MDHS") as the agency responsible for administering Medicaid. Id., ¶ 21. Fairview and Dr. Guth have opted to be a provider under Medicaid and to this end entered into a provider agreement with the MDHS to provide medical care to Medicaid recipients. Id. Under the provider agreement with the MDHS, defendants agreed to the following terms and conditions: (1) maintain records fully disclosing the benefits provided to Medicaid recipients in accordance with the Minnesota Rules; (2) furnish the Department of Human Services ("DHS") with such information as it may request regarding claimed for payments; (3) accept payment in full in accordance with the schedules provided by the DHS; (4) comply with all federal and state statutes and rules relating to the delivery of benefits; (5) assume full responsibility

for claims submitted to the DHS in accordance with federal regulations and Minnesota statutes; (6) include on claims submitted for payment the procedure and diagnosis codes specified by the DHS; (7) only submit claims for payments provided by health care personnel that meet the minimum professional qualifications established by the DHS; (8) make such control disclosures as required by federal regulations; (9) require that Medicaid recipients show their assistance cards each time benefits are rendered in accordance with Minnesota Rules; (10) comply with Title VI of the Civil Rights Act of 1864 and all accompanying regulations; (11) maintain records consistent with the Minnesota rules; (12) furnish information to the fraud control unit of federal and state agencies when requested; (13) ensure that the DHS is the payor of last resort; (14) submit claims that are no more than a provider's usual fee to the general public; (15) submit claims that are only medically necessary, which a provider knows are reimbursable under federal and state statutes and rules; (16) make full disclosures of persons convicted of Medicaid fraud as required by federal regulations; (17) comply with federal statutes and regulations regarding discrimination; (18) render recipients the same scope and quality of care as the public within program guidelines; (19) comply with all registration requirements; (20) comply with advance directive requirements as required by federal requirements; (21) comply with privacy rules and regulations as set forth in federal regulations; (22) implement written policies for the education of all employees and contractors that includes information of the Fraud Claim Act and provisions of the Social Security Act; and (23) cooperate under the state's audit process. Id., ¶¶ 22-24.

On February 5, 2009, Smith filed a formal complaint against Dr. Guth with the Minnesota Board of Medical Practice ("MBMP") and the complaint was assigned to Helen Patrikus ("Patrikus") for investigation. Id., ¶ 25. While Patrikus secured a statement from Dr. Guth, she did not contact Smith concerning his complaint or secure additional information from Smith concerning his matter. Id. Patrikus also failed to:

- Contact or speak with or take statements from Fairview staff who possessed material information to confirm the allegations made by Smith in his complaint against Dr. Guth, including adverse treatment; and

- Contact the Saint Paul Police Department to confirm that he was taken to Regions Medical Center after Dr. Guth discharged him from Fairview in retaliation for reporting Dr. Guth to hospital staff.

Id.

Patrikus recommended that no action be taken against Dr. Guth and summarily dismissed Smith's complaint. Id. The MBMP acted on Patrikus' recommendation and took no action against Dr. Guth. Id. Smith alleged that it is the practice of the MBMP and its agents to not conduct a thorough investigation of a complaint against medical providers by failing to obtain a complete record from the individuals who possess relevant information with regards to allegations set forth in complaints, which violated the civil liberties of Smith and others. Id., ¶ 26. The MBMP compounds this problem by failing to provide a complainant a list of actions taken in investigating complaints. Id.

In his "Claims" section, Smith alleged that defendants Fairview and Dr. Guth discriminated against him on the basis of being African American and disabled. Id., ¶ 27. Smith also alleged that Fairview and Dr. Guth denied him his right not to be discharged early when these defendants knew he was not ready to be discharged; his right to be treated with courtesy; the right to receive appropriate medical and personal

care based on his individual needs; the right to receive information regarding his treatment and diagnosis; the right to participate in the planning of his mental health care; the right to receive a continuity of care; the right to refuse or request care; the right not to be retaliated against on the basis of reporting mental abuse; the right to be free from adverse conduct; and the right to privacy and confidentiality as it related to his medical care. Id. According to Smith, these actions or lack of actions, violated the First, Fifth and Fourteenth Amendments of the United States Constitution; Article 1, §§ 2, 5, 7, 8 and 11 of the Minnesota Constitution; Minnesota Statute § 363.03, subdivision 1, of the Minnesota Human Rights Act ("MHRA"); 42 U.S.C § 2000cc-1 (Protection of Religious Exercise of Institutionalized Persons); the American with Disabilities Act ("ADA"); 29 U.S.C. § 794 (nondiscrimination under federal grants and programs "Rehabilitation Act"); 42 C.F.R. § 482.13; 42 U.S.C. §§ 1981, 1983 and 1985; and amounted to gross negligence and the intentional and negligent infliction of emotional distress. Id.

Smith further claimed that Fairview, the MBMP and Patrikus failed to properly investigate Smith's verbal complaints of abuse by Dr. Guth, which was reported to staff, while he was hospitalized and further failed to investigate, document and reprimand Dr. Guth when complaints were reported to defendants by other patients. Id., ¶ 28. According to Smith, these actions or lack of actions, violated the First, Fifth, Eighth and Fourteenth Amendments of the United States Constitution; Article 1, §§ 2, 5, 7, 8 and 11 of the Minnesota Constitution; Minnesota Statute § 363.03, subdivision 1; 42 U.S.C § 2000c-1; the ADA, 42 U.S.C. § 12101, et seq.; 29 U.S.C. § 794; 42 C.F.R. § 482.13; 42

U.S.C. §§ 1981, 1983, 1985, 1986 and 1988; and amounted to gross negligence and the intentional and negligent infliction of emotional distress.  Id.

In his Prayer for Relief, Smith requested: (1) monetary damages, including punitive damages; costs and attorney's fees; (2) a declaration from the Court providing that defendants' actions violated his constitutional and statutory rights; and (3) an order enjoining defendants from violating his rights both now and in the future.  Id., ¶¶ 29-30.

In lieu of answering the Amended Complaint, all defendants moved to dismiss Smith's claims against them.  Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Fairview and Dr. Guth moved to dismiss Smith's claims against them under 42 U.S.C. § 1983 on grounds that because they are not state actors, the Court lacks subject matter jurisdiction over these claims.  MBMP and Patrikus have also sought dismissal of Smith's suit against them in its entirety for lack of subject matter jurisdiction, on grounds that Smith lacked standing to sue them because he could assert no redressable injury for their alleged wrongful conduct as required by Article III, § 2 of the United States Constitution.  All defendants additionally moved to dismiss all claims for failure to state claim under Rule 12(b)(6).

## II.  STANDARD OF REVIEW

### A.  Rule 12(b)(1) Motion

"[I]f a plaintiff lacks standing, [a] district court has no subject matter jurisdiction. Therefore, a standing argument implicates Rule 12(b)(1)."  See Faibisch v. Univ. of Minnesota, 304 F.3d 797, 801 (8th Cir. 2002).  A motion to dismiss for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), may challenge the plaintiff's complaint either on its face or on the factual truthfulness of its averments.  See Titus v.

Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); see also Osborn v. United States., 918 F.2d 724, 729 n. 6 (8th Cir. 1990). In a facial challenge to jurisdiction, the court restricts its review to the pleadings and affords the non-moving party the same protections that it would receive under a Rule 12(b)(6) motion to dismiss. See Osborn, 918 F.2d at 729 n. 6. The court presumes that all of the factual allegations in the complaint concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction. See Titus, 4 F.3d at 593 (citing Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 731-32 (11th Cir. 1982)); Osborn, 918 F.2d at 729 n 6.

In a factual challenge to jurisdiction, the court may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of 12(b)(6). See Titus, 4 F.3d 590 at 593; Osborn, 918 F.2d at 729 n. 6. "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." Osborn, 918 F.2d at 730 (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F. 2d 884, 891 (3rd Cir. 1977)).

Here, depending on the claim, defendants brought both facial and factual challenges to jurisdiction, and the Court will consider the specific claims accordingly.

## B. Rule 12(b)(6) Motion

To withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955,

167 L.Ed.2d 929 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  Rather than summarize these principles, this Court quotes them verbatim.

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id., at 555, 127 S.Ct. 1955 (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557, 127 S.Ct. 1955.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557, 127 S.Ct. 1955 (brackets omitted).

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more

than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-50.  Following Twombly and consistent with Iqbal, the Eighth

Circuit stated:

After Twombly, we have said that a plaintiff "must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims ..., rather than facts that are merely consistent with such a right." Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007); see Wilkerson v. New Media Tech. Charter Sch., 522 F.3d 315, 321-22 (3d Cir. 2008). While a plaintiff need not set forth "detailed factual allegations," Twombly, 127 S.Ct. at 1964, or "specific facts" that describe the evidence to be presented, Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam), the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. Twombly, 127 S.Ct. at 1965 n. 3. A district court, therefore, is not required "to divine the litigant's intent and create claims that are not clearly raised," Bediako, 354 F.3d at 840, and it need not "conjure up unpled allegations" to save a complaint. Rios v. City of Del Rio, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotation omitted).

Gregory v. Dillard's, Inc. 565 F.3d 464, 473 (8th Cir. 2009).

Pro se complaints are held to less stringent standards than formal pleadings

drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam).

Nevertheless, "'[t]hough pro se complaints are to be construed liberally, see Estelle v.

Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), they still must allege

sufficient facts to support the claims advanced.'" Stone v. Harry, 364 F.3d 912, 914 (8th

Cir. 2004); <u>see</u> <u>also</u> <u>Martin v. Sargent</u>, 780 F.2d 1334, 1337 (8th Cir. 1985) (rejecting "merely general and conclusory allegations," and requiring that a "<u>pro</u> <u>se</u> complaint must contain specific facts supporting its conclusions.").

> When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework. That is quite different, however, from requiring the district court to assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint.

<u>Stone</u>, 364 F.3d at 915.

Consequently, a court "will not supply additional facts, nor will [it] construct a legal theory for plaintiff that assumes facts that have not been pleaded." <u>Id.</u> (quoting <u>Dunn v. White</u>, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## III. ANALYSIS

### A. <u>Fairview and Dr. Guth's Motion to Dismiss</u>

#### 1. <u>Constitutional Claims Against Fairview and Dr. Guth</u>

Fairview and Dr. Guth asserted that Smith has failed to plead a viable claim under the First, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution, as Smith's blanket references to these amendments do not identify which specific rights were violated within the enumerated amendments, much less facts to support these legal conclusions. <u>See</u> Fairview and Dr. Guth's Memorandum of Law in Support of Motion to Dismiss Amended Complaint ("Fairview Mem.") [Docket No. 37] at pp. 6-7. Smith disagreed, arguing that Fairview and Dr. Guth violated his First Amendment right to petition the government for redress of grievances when Dr. Guth discharged him after

Smith reported maltreatment; violated his right to due process under the Fifth Amendment by discharging him without a hearing; violated his Eighth Amendment rights by showing deliberate indifference towards him by discharging him given his condition; and violated his right to equal protection under the Fourteenth Amendment because he was treated differently from other patients when he asserted his right to privacy and reported Dr. Guth's wrongful conduct. <u>See</u> Smith's Response to Opposition Memorandum of Law in Support to Defendants' Motion to Dismiss Smith's Amended Complaint ("Smith Fairview Opp.") [Docket No. 68] at pp. 22-30.

This Court agrees with defendants that dismissal of Smith's claims under the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution is warranted, where as here, the Amended Complaint does not set forth the rights under any of these amendments that were allegedly violated by Fairview and Dr. Guth. More critically, these constitutional claims must be dismissed because no direct cause of action can be brought under the United States Constitution. <u>See</u> <u>Azul-Pacifico, Inc. v. City of Los Angeles</u>, 973 F.2d 704, 705 (9th Cir. 1992), <u>cert.</u> <u>denied</u> 506 U.S. 1081 ("Plaintiff has no cause of action directly under the United States Constitution. . . . [A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983.") (citing <u>Thomas v. Shipka</u>, 818 F.2d 496, 499 (6th Cir. 1987) ("where a plaintiff states a constitutional claim under 42 U.S.C. § 1983, that statute is the exclusive remedy for the alleged constitutional violation"), *vacated on other grounds by* 488 U.S. 1036 (1989); <u>Hunt v. Robeson County Dept. of Social Serv.</u>, 816 F.2d 150 (4th Cir. 1987), <u>Morris v. Metropolitan Area Transit Auth.</u>, 702 F.2d 1037 (D.C. Cir. 1983)). Stated otherwise, even if Smith had set forth a description of the specific substantive rights for which he

was seeking vindication against Fairview and Dr. Guth under First, Fifth, Eighth and Fourteenth Amendments, his attempt to assert direct constitutional claims under these amendments cannot succeed. Therefore, this Court recommends that these claims be dismissed with prejudice as they cannot state a claim as a matter of law.

### 2. 42 U.S.C. § 1983 Claims Against Fairview and Dr. Guth

Section 1983 is the proper vehicle for asserting a claim under United States Constitution. This statute provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

42 U.S.C. § 1983.

The first element required for a § 1983 claim is a determination of "whether the plaintiff has been deprived of a right 'secured by the Constitution and laws' of the United States." Doe v. Wright, 82 F.3d 265, 268 (8th Cir. 1996) (quoting Martinez v. California, 444 U.S. 277, 284 (1980)). The second element for a § 1983 claim is that "'the alleged deprivation was committed by a person acting under color of state law.'" Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 778 (8th Cir. 2001) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

"[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful. . . ." American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (citation and marks omitted). In order to be deemed a state actor, the action of the private actor must be "'fairly attributable to the

State,' that is, in this context, that 'the party charged with the deprivation [was] a person who may fairly be said to be a state actor.'" Nichols v. Metropolitan Center for Independent Living, Inc., 50 F.3d 514, 517 (8th Cir. 1995) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)) (citation omitted).

If this Court finds that Fairview and Dr. Guth are not state actors, it lacks subject matter jurisdiction to hear a § 1983 claim. See, e.g., Major v. Stocker, Smith, Lucianti & Staub, No. CV-09-0140-FVS, 2009 WL 2595594 at *3 (E.D. Wash. Aug. 19, 2009) ("Because Defendants did not act under color of state law and Plaintiffs' allegations are insufficient to turn Defendants into state actors, the Court lacks subject matter jurisdiction over the individual Defendants pursuant to § 1983."); Horn v. Wesco Properties, Inc., No. C08-5528RBL, 2009 WL 36830 at *1 (W.D. Wash. Jan. 05, 2009) ("The Court lacks subject matter jurisdiction because none of the named defendants are state actors for purposes of § 1983 analysis.").

Fairview and Dr. Guth premised their motion to dismiss Smith's § 1983 claims on grounds that they are not state actors. Fairview is owned and operated by Fairview Health Services, a Minnesota nonprofit corporation, and neither the State of Minnesota nor the University of Minnesota have an ownership interest in the hospital. Fairview Mem. at p. 8 (citing to Affidavit of George T. Chresand, ¶¶ 2, 3). Dr. Guth and Fairview additionally contended that Smith's § 1983 claims must fail because they are not in a "symbiotic relationship" with the state so as to make them a state actor and there is nothing in Smith's Amended Complaint alleging that the state compelled or influenced defendants to take the actions they did against Smith. See Fairview Mem. at p. 9; Fairview Defendants' Reply Brief in Support of Motion to Dismiss ("Fairview Reply")

[Docket No. 71] at pp. 4-5. Finally, Fairview and Dr. Guth submitted that it is not enough that they receive federal funding or are subject to state regulations.

Smith disagreed, arguing that Fairview and Dr. Guth are state actors because of their contractual agreement with the State of Minnesota to provide federal Medicaid benefits to the poor and disabled. <u>See</u> Fairview Mem. at pp. 7-10; Smith Fairview Opp. at pp. 13-21. In particular, Smith submitted that Fairview and Dr. Guth are state actors because they received federal government funding for medical services provided to patients, including Smith; they agreed to adhere to state and federal regulations that impacted their conduct in exchange for government funds; and that their decision to discharge Smith benefited the MDHS in the form of saving money from having to treat him. <u>Id.</u> at pp. 20-21.

The United States Supreme Court in <u>Blum v. Yaretsky</u>, 457 U.S. 991 (1982) is instructive to this Court's analysis. <u>Blum</u> dealt with plaintiffs who were patients at a private nursing home that were recipients of Medicaid benefits. <u>Id.</u> at 995. The nursing home staff decided to transfer the patients to a lower level of care and reported their decision to New York City officials who were responsible for administering the Medicare program in the city and the officials prepared to reduce or terminate payments to the nursing home for the plaintiffs' care. <u>Id.</u> Following administrative hearings, state social service officials affirmed the decision to discontinue benefits unless the plaintiffs accepted a transfer to a reduced level of care. <u>Id.</u> The plaintiffs then filed suit against the Commissioners of the New York Department of Social Services and the Department of Health, which included claims that these defendants violated plaintiffs' rights under state and federal law and under the Due Process Clause of the Fourteenth Amendment.

Id. at 996.  At issue was whether state officials could be held liable for the decisions of the private nursing homes to discharge or transfer Medicaid patients to lower levels of care so as to support a finding that the defendants had violated the patients' rights secured by the Fourteenth Amendment.  The Supreme Court acknowledged that the case before it was not the same as other cases that have come before it.

> This case is obviously different from those cases in which the defendant is a private party and the question is whether his conduct has sufficiently received the imprimatur of the State so as to make it "state" action for purposes of the Fourteenth Amendment.  See, e.g., Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); Jackson v. Metropolitan Edison Co., supra; Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); Adickes v. S. H. Kress & Co., supra. It also differs from other "state action" cases in which the challenged conduct consists of enforcement of state laws or regulations by state officials who are themselves parties in the lawsuit; in such cases the question typically is whether the private motives which triggered the enforcement of those laws can fairly be attributed to the State. See, e.g., Peterson v. City of Greenville, 373 U.S. 244, 83 S.Ct. 1119, 10 L.Ed.2d 323 (1963).

Id. at 1003-04.  Then the Court determined that "'[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State" and the "complaining party must also show that 'there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.'"  Id. at 1004 (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 350-351 (1974)).  The Supreme Court proceeded to find that substantial state subsidization of medical expenses and the licensing of facilities did not create a symbiotic relationship between the state and the nursing homes so as to convert the nursing home's actions into state action.

> Respondents argue that state subsidization of the operating and capital costs of the facilities, payment of the medical expenses of more than 90% of the patients in the facilities, and the licensing of the facilities by the State, taken together convert the action of the homes into "state" action. But accepting all of these assertions as true, we are nonetheless unable to agree that the State is responsible for the decisions challenged by respondents. As we have previously held, privately owned enterprises providing services that the State would not necessarily provide, even though they are extensively regulated, do not fall within the ambit of <u>Burton</u>. That programs undertaken by the State result in substantial funding of the activities of a private entity is no more persuasive than the fact of regulation of such an entity in demonstrating that the State is responsible for decisions made by the entity in the course of its business.

<u>Id.</u> (citations omitted).

The Eighth Circuit has also found that found that extensive regulation by the state and the receipt of Medicare funds does not covert a private medical provider into a state actor. <u>See</u> <u>Alexander v. Pathfinder, Inc</u>., 189 F.3d 735, 740 (8th Cir. 1999) (citing <u>Blum</u>, 457 U.S. at 1002-12)) (citation omitted); <u>see also</u> <u>Briscoe v. Bock</u>, 540 F.2d 392, 395-96 (8th Cir. 1976) ("In the instant case there is nothing to indicate that there was any connection between plaintiff's dismissal from the staff of the Hospital and the fact that the Hospital had received Hill-Burton or other public funds, or the fact that the Hospital has a tax exempt status or the fact that the Hospital was subject to state regulation, or the fact that in 1974 the Hospital was an active member of ARCH. Hence, there is no such nexus between the state's relationship to the Hospital's operation and the dismissal of the plaintiff as to justify attribution of the challenged action of the Hospital to the state."); <u>Lubin v. Crittenden Hospital Associates, Ltd.</u>, 713 F.2d 414, 416 (8th Cir.1983), <u>cert.</u> <u>denied</u>, 465 U.S. 1025 (1982) ("In order for the Hospital's discipline of Dr. Lubin to be classified as state action there must be a sufficiently close nexus

between the challenged action of the Hospital and the state's regulation so that the action of the former may be fairly treated as that of the state itself. 'The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains.'") (quoting Blum, 102 S.Ct. at 2786) (internal citation omitted).

Here, Smith has alleged that Medicaid is a joint state and federal assistance program in which Minnesota has opted to participate, MDHS has been designated as the single state agency responsible for the administration of Medicaid, and Fairview and Dr. Guth received money Medicaid funds for treating Smith. See Amended Complaint, ¶ 21. But, as stated above, receipt of government funds is not sufficient to render Fairview and Dr. Guth state actors. Further, extensive regulation and receipt of government funds does not convert a private medical provider, who provides medical services that a state would not normally provide, into a state actor. Finally, the fact that the state benefitted from Fairview and Dr. Guth's decision to discharge Smith in the form of saving money from having to treat him, is meritless. First, such a claim was not alleged in the Amended Complaint, and second even if the state did save money from not treating Smith, (which inevitably occurs anytime a Medicaid provider does not provide a particular treatment), Smith has not alleged any facts to support a claim that there was a nexus between the State of Minnesota and Dr. Guth's decision to discharge him. In short, there are no allegations in the Amended Complaint to suggest that the Minnesota had any involvement with Dr. Guth's decision to discharge Smith.

Where Smith has failed to allege facts to support his assertion that Fairview and Dr. Guth were state actors for the purposes of his § 1983 claim, this Court concludes

that their motion to dismiss his § 1983 claim should be granted and should be dismissed with prejudice.

### 3. 42 U.S.C. § 1981 Claim Against Fairview and Dr. Guth

Section 1981, in part, addresses racial discrimination in contracts. Specifically, it provides for equal rights under the law and states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a). "Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights," and which was the result of racial discrimination. See Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006).

Fairview and Dr. Guth submitted that Smith's claim under 42 U.S.C. § 1981 should be dismissed because the Amended Complaint does not allege any racially discriminatory conduct by Dr. Guth or the Fairview staff, and it failed to assert that Smith was thwarted by them from making or enforcing a contract, suing, giving evidence, or enjoying the full benefit of the laws. See Fairview Mem. at p. 11. Smith countered that Fairview and Dr. Guth interfered with his ability to enter into a contract based on his race and that his Amended Complaint sufficiently asserted such a claim because he pled that defendants terminated his health benefits in retaliation for reporting Dr. Guth. See Smith Fairview Opp. at pp. 35-36.

Even if Fairview or Dr. Guth terminated Smith's medical treatment in retaliation for reporting Dr. Guth, as he alleged, no where does this assertion or any other part of the Amended Complaint allege a contract or prospective contract (or any other right under § 1981) that these defendants impaired, much less any facts to suggest that any alleged impairment was based on Smith's race. As such, Fairview and Dr. Guth's motion to dismiss as it relates to Smith's § 1981 claim should be granted and the claimed dismissed without prejudice.

### 4. 42 U.S.C. § 1985 Claim Against Fairview and Dr. Guth

Title 42 U.S.C. § 1985(3)[1] provides in relevant part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws . . . [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

To establish a state a claim under § 1985, Smith must allege and demonstrate: (1) a conspiracy; (2) for the purpose of depriving another of equal protection of the law; (3) an act in furtherance of the conspiracy; and (4) an injury to a person or property, or deprivation of a legal right. See Federer v. Gephardt, 363 F.3d 754, 757-58 (8th Cir. 2004) (citation omitted); see also Larson by Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir.1996) (en banc); D.W. v. Radisson Plaza Hotel Rochester, 958 F. Supp. 1368,

---

[1] Smith has not identified the specific subsection of § 1985 under which he is seeking relief in his Amended Complaint, however, based on the allegations in his Amended Complaint, this Court assumes that he is attempting to assert a claim under § 1985(3).

1376 (D. Minn. 1997). Claims under § 1985(3) also require a plaintiff to demonstrate a racial or class-based animus. See Griffin v. Breckenridge, 403 U.S. 88, 102 (1971); see also City of Omaha Employees Betterment Ass'n v. City of Omaha, 883 F.2d 650, 652 (8th Cir. 1989) ("The 'purpose' element of the conspiracy requires that the plaintiff prove a class-based 'invidiously discriminatory animus.'") (citation omitted). Section 1985 can cover private conspiracies. See Dornheim v. Sholes, 430 F.3d 919, 924 (8th Cir. 2005); Lewis v. Pearson Foundation, Inc., 908 F.2d 318, 321-22 (8th Cir. 1990).

Rule 8(a) of the Federal Rules of Civil Procedure provides in relevant part that a plaintiff need only include "a short and plain statement of the claim showing that the pleader is entitled to relief, . . ." However, the Eighth Circuit has found that a claim for conspiracy must be alleged with more particularity than is normally required by Rule 8(b) of the Federal Rules of Civil Procedure." A plaintiff must allege with 'sufficient particularity' . . . that the parties reached some agreement and conspired together to deprive plaintiff of a federal right." Gometz v. Culwell, 850 F.2d 461, 464 (8th Cir. 1988) (citation omitted); see also Marti v. City of Maplewood, Missouri, 57 F.3d 680, 685 (8th Cir. 1995) ("'[T]he [appellants] must allege with particularity and specifically demonstrate with material facts that the Unions reached an agreement.' This showing can be accomplished by pointing to facts suggesting that the appellees reached an understanding to violate appellants' civil rights.") (quoting Employees Betterment Ass'n v. Omaha, 883 F.2d 650, 652 (8th Cir. 1989)).

Fairview and Dr. Guth argued that Smith failed to allege sufficient facts to support the elements for a cause of action under 42 U.S.C. § 1985. See Fairview Mem. at pp. 11-12; Fairview Reply at pp. 7-8. Smith countered that he has carried his burden as to

this claim and that material fact exists as to whether defendants conspired to violate his civil rights.  <u>See</u> Smith Fairview Opp. at p. 33.

Smith's § 1985 claim fails under Rule 8 (a) and (b) and the pleading requirements articulated by the Supreme Court in <u>Twombly</u> and <u>Iqbal</u>.  In particular, the Amended Complaint does not set forth any allegations or facts regarding an agreement or understanding to violate Smith's civil rights (let alone allege any conspiracy) and his failure to plead facts to suggest a meeting of the minds is fatal.  As such, this Court recommends that Fairview and Dr. Guth's motion to dismiss Smith's § 1985 claim be granted and that the claim be dismissed without prejudice.

### 5.    42 U.S.C. § 1986 Claim Against Fairview and Dr. Guth

42 U.S.C. § 1986 states that:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

A cause of action under 42 U.S.C. § 1986 is dependent upon a valid § 1985 claim.  <u>See</u> <u>Lewellen v. Raff</u>, 843 F.2d 1103, 1116 (8th Cir.1988), <u>cert.</u> <u>denied</u>, 489 U.S.

1033 (1989); <u>see</u> <u>also</u> <u>Adams v. Boy Scouts of America-Chickasaw Council</u>, 271 F.3d 769, 774 n. 8 (8th Cir. 2001).  Since Smith has failed to state a claim under § 1985, his claim under § 1986 also fails to state claim for relief.  Fairview and Dr. Guth's motion to dismiss this claim should be granted and the claim be dismissed without prejudice.

### 6.    42 U.S.C § 2000cc-1 Claim Against Fairview and Dr. Guth

42 U.S.C § 2000cc-1 provides in relevant part:

> <u>No government</u> shall impose a substantial burden on the <u>religious exercise</u> of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C § 2000cc-1(a)(1)-(2) (emphasis added).

Fairview and Dr. Guth argued that Smith's claim under 42 U.S.C § 2000cc-1 should be dismissed as they are not a governmental entity under the statute and because Smith alleged no burden on his exercise of religion.  <u>See</u> Fairview Mem. at pp. 13-14.  Smith did not respond to this argument.  Because Smith failed to respond to this argument, he has abandoned this claim. <u>See</u> <u>Thomsen v. Ross</u>, 368 F.Supp.2d 961, 974 n. 9 (D. Minn. 2005).  In any event, Fairview and Dr. Guth are correct that they are not governmental entities.  In addition, Smith's Amended Complaint makes no reference to Fairview or Dr. Guth imposing any burden on the religious exercise of Smith.  As such, Fairview and Dr. Guth's motion to dismiss as it relates to Smith's claim under 42 U.S.C § 2000cc-1 should be granted and the claim be dismissed with prejudice.

### 7. 42 U.S.C. § 1988 Claim Against Fairview

Section 1988 provides in relevant part: "[i]n any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title" and "the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc et seq.], . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. . . ." 42 U.S.C. § 1988(b).

Fairview argued that 42 U.S.C. § 1988 only provides for attorney's fees if Smith is the prevailing party with regards to his claims under 42 U.S.C. §§ 1981, 1983, 1985 or 1986, and as Smith has failed to state viable claims under these statutes, he cannot obtain an award of attorney's fees. See Fairview Mem. at p. 13. Smith did not respond to Fairview's arguments.

Given that this Court has concluded that Smith's claims under 42 U.S.C. §§ 1981, 1983, 1985 or 1986 and 42 U.S.C § 2000cc-1 are not viable, Smith is not entitled to relief under § 1988. Moreover, even if Smith were successful on any of his claims under these statutes, as a pro se litigant he is not entitled to an award of attorneys fees. See Kay v. Ehrler, 499 U.S. 432, 437-38 (1991) (finding that a pro se litigant in a §1988 action is not entitled to an award of attorney's fees). Fairview's motion to dismiss as it relates to Smith's § 1988 claim should be granted and the claim be dismissed with prejudice.

### 8. ADA and Rehabilitation Act Claims against Fairview and Dr. Guth

Title II of the ADA provides "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of

the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

The Rehabilitation Act, 29 U.S.C. § 794, provides that no otherwise qualified individual with a disability shall be "excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

In order to demonstrate a violation of Title II or the Rehabilitation Act, Smith must demonstrate:

> 1) he is a qualified individual with a disability; 2) he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the entity; and 3) that such exclusion, denial of benefits, or other discrimination, was by reason of his disability.

Layton v. Elder, 143 F.3d 469, 472 (8th Cir. 1998); see also Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999) (citing Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir. 1998)) (finding that to state a prima facie claim under the Rehabilitation Act, a plaintiff must show: (1) "he is a person with a disability as defined by the statute"; (2) "he is otherwise qualified for the benefit in question"; (3) "he was excluded from the benefit due to discrimination based upon disability"; and (4) "the program or activity from which he is excluded receives federal financial assistance."  There is no significant difference in analysis of the rights set forth by the ADA and the Rehabilitation Act.  See, e.g., Allison v. Dep't of Corr., 94 F.3d 494, 497 (8th Cir. 1996).

Fairview and Dr. Guth asserted that Smith's ADA claims under 42 U.S.C § 12101, et seq. and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, should be dismissed because Smith failed to allege how they discriminated against him based on

his disability.  <u>See</u> Fairview Mem. at pp. 14-15.  Smith replied that he has brought a "colorable" claim under Title II of the ADA and is bringing a claim for defendants' failure to accommodate his disability under the Rehabilitation Act.  <u>See</u> Smith Fairview Opp. at pp. 37-38.  In response to his failure-to-accommodate argument, Fairview and Dr. Guth contended that the Amended Complaint does not set forth facts or a claim for a failure to accommodate under the ADA or the Rehabilitation Act.  <u>See</u> Fairview Defendants' Reply Brief in Support of Motion to Dismiss Amended Complaint at pp. 8-9.

Smith alleged that he was a "disabled person" receiving social security disability benefits for his "recognized disabilities" of depression, PTSD and chronic back pain. <u>See</u> Amended Complaint, ¶ 4.  The only other claim regarding his disability was his allegation that Fairview and Dr. Guth denied Smith his right not to be discriminated against based on his disability.  <u>Id.</u>, ¶ 27.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions . . . ."  <u>Twombly</u>, 550 U.S. at 555 (internal citations omitted).  Here, Smith has only stated in his Amended Complaint that he is disabled and that defendants discriminated against him based his disability.  Lacking any facts to show how he was discriminated against based on his purported disabilities, Smith's ADA and Rehabilitation Act claims amount to nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."   <u>Iqbal</u>, 129 S.Ct. at 1949 (citations omitted). Further, while Smith stated in his opposition memorandum that he was asserting a claim that defendants failed to accommodate his disability, there are no such allegations or facts to support such allegations in his Amended Complaint.  The Court cannot supply

additional facts or construct a legal theory for Smith that has not been pled in his Amended Complaint when addressing a Rule 12(b)(6) dismissal.  See Stone, 364 F.3d at 915 (citation omitted).

Because Smith has failed to allege any facts as to how he was deprived of his right not to be discriminated against based on his disability, he has failed to properly state a claim for relief under the ADA or the Rehabilitation Act for the purposes of Rule 12(b)(6).  Therefore, Fairview and Dr. Guth's motion to dismiss as it relates to Smith's ADA and Rehabilitation Act claims should be granted and the claims be dismissed without prejudice.

### 9.    42 C.F.R. § 482.13 Against Fairview and Dr. Guth

Fairview and Dr. Guth maintained that any claim by Smith under 42 C.F.R. § 482.13 should be dismissed as the federal regulation does not provide for a private cause of action.  See Fairview Mem. at p. 16.  Smith did not respond to this argument and thus, has abandoned this claim. See Thomsen, 368 F. Supp.2d at 974 n. 9. Moreover, Smith's claim should be dismissed as the regulation does not afford him with any relief.

> When a statute has provided a general authorization for private enforcement of regulations, it may perhaps be correct that the intent displayed in each regulation can determine whether or not it is privately enforceable. But it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself.

Alexander v. Sandoval, 532 U.S. 275, 291 (2001).

The regulation 42 C.F.R. § 482.13 provides that hospital patients have the right to receive notice of their rights, to be involved in the planning of their healthcare, to

make informed decisions, to privacy and confidentially, to be free of physical and mental abuse (including the right to be free of restraint and seclusion unless necessary), and to a grievance process set up by the hospital.   Nothing in this regulation provides for a private cause of action.   Further nothing in the text of the statute authorizing the regulation, 42 U.S.C. § 1396hh, suggests any right to a private cause of action to enforce the regulations set forth at § 482.13.[2]  On this basis, this Court finds that even if Smith had not abandoned this claim, 42 C.F.R. § 482.13 can provide him with no relief.

For all of these reasons, Fairview and Dr. Guth's motion to dismiss as it relates to Smith's claim under 42 C.F.R. § 482.13 should be granted and the claim be dismissed with prejudice.

### 10.    Subject Matter Jurisdiction Over Smith's State Claims

In light of this Court's recommendation that all of Smith's federal claims be dismissed, all of the claims conferring federal question jurisdiction are gone. Consequently, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Smith's remaining state claims (Article 1, §§ 2, 5, 7, 8 and 11 of the Minnesota Constitution and Minnesota Statute § 363.03, subdivision 1, of the MHRA).  See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988) ("When federal claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction. . . .") (citation and marks omitted); Johnson v. City of Shorewood, 360 F.3d 810, 819 (8th Cir. 2004). Russell v. Hennepin County, No. 03-4889 (PAM/RLE), 2004 WL 2370681 at *3 (D.

---

[2]    The regulation also lists 42 USC 1302, which deals with small rural hospitals, and 42 U.S.C. § 1395rr, dealing with end stage renal disease. Neither of which have any application to this case.

Minn. Oct. 08, 2004) (citing 28 U.S.C. § 1367(c)(3)).  Smith's state law claims should be dismissed without prejudice.

### B.    Motion to Dismiss by MBMP and Patrikus Based on Lack of Standing

"Article III, § 2, of the United States Constitution . . . limits the subject matter jurisdiction of federal courts to actual cases and controversies."  McClain v. American Economy Ins. Co., 424 F.3d 728, 731 (8th Cir. 2005).  In order "to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'"  Id. (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000)).

Smith's Amended Complaint against MBMP and Patrikus alleged that they failed to properly investigate and reprimand Dr. Guth based on his and other patients' complaints, or to provide those persons who make complaints with a list of actions taken and the results of the investigation.  See Amended Complaint, ¶¶ 25, 26, 28.

MBMP and Patrikus argued that Smith's claimed injuries arose out of his treatment with Dr. Guth, which occurred before he lodged a complaint with the MBMP. See Defendants Minnesota Board of Medical Practice and Helen Patrikus' Memorandum in Support of Motion to Dismiss [Docket No. 62] ("MBMP Mem.") at p. 7. According to MBMP and Patrikus, Smith's assertion that they failed to investigate, document and discipline Dr. Guth fails to set forth which of his legally protected interests were invaded by this alleged failure and that his mere dissatisfaction with the outcome

of the investigation of Dr. Guth's actions does not create an injury or confer standing to sue under Article III of the U.S. Constitution.  Id.

In opposition, Smith argued that he does have standing under Article III to sue MBMP and Patrikus because MBMP has a duty to protect the public under Minn. Stat. § 147.001 and a duty to disclose it findings and actions to a party making a complaint under Minn. Stat. § 147.091, subd. 4.  See Smith's Response to Minnesota Board of Medical Practice and Helen Patrikus' Memorandum in Support of Motion to Dismiss ("Smith MBMP Opp.") [Docket No. 77] at pp. 9-10.  Smith claimed that had MBMP and Patrikus conducted a proper investigation, they would have found Fairview and Dr. Guth accountable for a violation of his rights.  Id. at pp. 8-9.

Assuming as true Smith's allegations that MBMP and Patrikus failed to properly investigate and reprimand Dr. Guth based on his complaint and the complaints of other patients, and that they failed to properly disclose their findings and actions to Smith, such a finding does not state a redressable injury.   This is because Smith has not alleged and cannot allege any facts to show how he was injured as a result of MBMP and Patrikus's investigation or lack of investigation or for that matter, what relief the Court could provide to him if he succeeded in his claim against them.  See Valley Forge Christian College v. Americans United For Sep. of Church and State, Inc., 454 U.S. 464, 472 (1982) (citations omitted) (finding that Article III only requires that the party invoking the court's jurisdiction "show that he personally has suffered some actual or threatened injury as a result of the putative illegal conduct of the defendant, and that the injury . . . is likely to be redressed by a favorable decision.") (citations and marks omitted).  For example, had the MBMP concluded that Dr. Guth acted improperly and taken

disciplinary action against him, such a finding could confer no relief on Smith personally. Similarly, if the Court ordered the MBMP and Patrikus to re-open and re-do its investigation of Smith's complaint of Dr. Guth or to conduct its <u>future</u> investigations in a manner as alleged by Smith to protect the public, (<u>e.g.</u>, disclose its findings in a more particularized manner or question more individuals), such an order would not and could not provide any relief to Smith because whatever result MBMP reached as to Dr. Guth would not bestow a benefit on Smith.[3] Smith does not have standing to sue MBMP and Patrikus because he has failed to plead and cannot plead "an injury to himself that is likely to be redressed by a favorable decision." <u>Simon v. Eastern Kentucky Welfare Rights Organization</u>, 426 U.S. 26, 38 (1976).

In summary, Smith's failure to allege a redressable injury against MBMP and Patrikus is fatal to his suit against them, as the requirement of a live case or controversy is not satisfied. <u>See</u> <u>Warth v. Seldin</u>, 422 U.S. 490, 499 (1975) ("The Art. III judicial

---

[3] This Court notes that Minn. Stat. § 147.001 provides that :

> The primary responsibility and obligation of the Board of Medical Practice is to protect the public.
>
> In the interest of public health, safety, and welfare, and to protect the public from the unprofessional, improper, incompetent, and unlawful practice of medicine, it is necessary to provide laws and regulations to govern the granting and subsequent use of the license to practice medicine.

Minn. Stat. § 147.001. The statute Minn. Stat. § 147.111 setting forth the obligations pertaining to the Minnesota Board of Medical Practice "does not set forth mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole." <u>Jensen v. Leonard</u>, NO. A08-2253, 2009 WL 3364264 at *9 (Minn. Ct. App. Oct. 20, 2009). Further, individuals who work for the MBMP are immune from civil suit arising out of their duties. <u>See</u> Minn. Stat. § 147.121, subd. 2.

power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally.") (citation omitted). Therefore, MBMP and Patrikus' motion to dismiss should be granted and the Amended Complaint dismissed with prejudice as to these defendants.[4]

## RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.	Defendants University of Minnesota Medical Center-Fairview-Riverside Campus and Dr. David Guth, D.O.'s Motion to Dismiss Amended Complaint [Docket No. 36] be **GRANTED** as follows:

a.	Defendants' Motions to Dismiss Plaintiff's claims under 42 U.S.C. §§ 1981, 1985, 1986; 42 U.S.C § 12101, et seq.; 29 U.S.C. § 794; Article 1,

---

[4]	MBMP and Patrikus also argued that they were entitled to dismissal of Smith's suit on grounds that: (1) the Eleventh Avengement barred all of Smith's claims (except for his ADA claim) against the MBMP and Patrikus in her official capacity; (2) Patrikus is immune from all state claims brought against her pursuant to Minn. Stat. § 147.121; (3) Smith failed to plead a viable claim under the ADA because he failed to allege how he was harmed or how their actions were the result of his disabilities; (4) Smith alleged no facts showing how the MBMP and Patrikus violated his constitutional rights; (5) Smith's claim under 29 U.S.C. § 794 failed because the MBMP is not a federal program and Smith alleged no facts to establish discrimination against him; (6) Smith's claims under 42 U.S.C. § 1981 failed because he did not allege that race played a role in the MBMP and Patrikus' decision and failed to assert what right was at issue; (7) Smith's 42 U.S.C. §§ 1983, 1985 and 1986 claims failed because the MBMP is not a "person" for the purposes of these statutes and because Smith failed to set forth any right that he was deprived by Patrikus; (8) Smith's 42 U.S.C. § 1988 failed to state a claim for relief; (9) Smith's claim under 42 U.S.C § 2000cc-1 failed because it deals with the exercise of religious beliefs, which has nothing to do with this case; (10) any claim by Smith under 42 C.F.R § 482.13 failed because the MBMP and Patrikus are not a hospital; and (11) Smith's state claims should be dismissed because they failed to state a claim for relief and since all of the federal claims against MBMP and Patrikus were without merit, the Court should not exercise supplemental jurisdiction over the state law claims. See MBMP Mem. at pp. 8-22. Given that the Court has already recommended dismissal of Smith's action for a lack of subject matter jurisdiction under Article III, the Court does not reach these arguments.

§§ 2, 5, 7, 8 and 11 of the Minnesota Constitution; and Minnesota Statute § 363.03, subdivision 1 be **GRANTED** and that the claims be **DISMISSED WITHOUT PREJUDICE;** and

b.    Defendants' Motions to Dismiss Plaintiff's claims under First, Fifth, Eighth and Fourteenth Amendments; 42 U.S.C. § 1983; 42 U.S.C. § 1988; 42 U.S.C § 2000cc-1; and 42 C.F.R. § 482.13 be **GRANTED** and that the claims be **DISMISSED WITH PREJUDICE**.

2.    Defendants Minnesota Board of Medical Practice and Helen Patrikus' Motion to Dismiss Amended Complaint [Docket No. 53] be **GRANTED**. Smith's Amended Complaint as to the Minnesota Board of Medical Practice and Helen Patrikus should be **DISMISSED WITH PREJUDICE**.

Dated:      July 14, 2010

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

**NOTICE**

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **July 28, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **July 28, 2010**.